# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | | |
|---|---|---|
| KAMILAH KANICESS FARMER, | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | No. 2:13-cv-02370-JPM-dkv |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social | ) | |
| Security, | ) | |
|     Defendant. | ) | |

## ORDER AFFIRMING DECISION OF COMMISSIONER

Plaintiff Kamilah Kanicess Farmer brought this action for judicial review of Defendant Carolyn W. Colvin's ("the Commissioner") final decision denying Plaintiff's application for disability insurance benefits under Title II of the Social Security Act ("Act") and her application for supplemental security income ("SSI") benefits based on disability under Title XVI of the Act.

For the reasons set forth below, the decision of the Commissioner is AFFIRMED.

## I.   BACKGROUND

### A.   Factual Background

Farmer was born on September 25, 1977, and at the time of her hearing before the ALJ, was thirty-four years old.  (R. 38.) Farmer is five feet and eight inches tall and weighs 234 pounds. (R. 147.)  She graduated from high school.  (R. 38.)  Farmer

worked as a supervisor for a plant vending company from 2005 until she was laid off in 2009. (R. 39, 133-34, 148.) Prior to that, she worked as a server/cashier for several different businesses. (R. 133-37; 148, 153-60.)

Farmer receives unemployment benefits. (R. 39.) Farmer testified that, in order to receive these benefits, she certifies each week that she is able and available for work. (R. 40.) Although she informs the unemployment agency that she is applying for jobs, she is not, in fact, applying for jobs. (Id.)

Farmer suffers from anxiety, depression, and bipolar disorder. (R. 42.) She alleges that she became unable to work on September 29, 2009, as a result of these conditions. (See R. 73, 128, 147.) Specifically, Farmer alleges that her conditions affect her ability to concentrate and ability to "get out of bed" and cause a "lack of energy, low tolerance for stress, mood swings . . . , and lack of interest." (R. 161.) According to Farmer, she does not change clothes, bathe, care for her hair, or prepare her own food on a regular basis. (R. 162.) She does do laundry, walk and feed her dogs, and shop for groceries. (R. 162-64.) Although her family comes to visit her approximately "once every two weeks," she does not have other social activities. (R. 165-66.) At the ALJ hearing, Farmer also complained that she experienced drowsiness as a result of her

medications. (R. 45-46.) Farmer has not returned to work since being laid off in 2009. (R. 147-48.)

**B.  Procedural Background**

Plaintiff filed a Title II application for a period of disability and disability insurance benefits on June 14, 2010. (See R. 123.) Plaintiff also filed a Title XVI application for supplemental security income on June 14, 2010. (R. 128.) Plaintiff alleged that she has suffered from anxiety, depression, and bipolar disorder since September 29, 2009, which rendered her unable to work. (See ECF No. 10 at 1, 4.)

Plaintiff's applications were denied initially on September 8, 2010, and upon reconsideration on January 7, 2011, by the Social Security Administration. (See R. 65-68.) Plaintiff then requested a hearing before an administrative law judge ("ALJ") (see R. 84), which was held on November 2, 2011 (see R. 38).

On January 30, 2012, the ALJ issued a decision, finding that Plaintiff was not entitled to benefits. (R. 22-31.) Specifically, the ALJ made the following findings of fact:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2014.

2. The claimant has not engaged in substantial gainful activity since September 29, 2009, the alleged onset date (20 CFR 404.1571 et seq., and 416.971 et seq.).

3. The claimant has the following severe impairments: Bipolar disorder and posttraumatic stress disorder (20 CFR 404.1520(c) and 416.920(c)).

. . . .

4.  The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

. . . .

5.  After careful consideration of the entire record, the [ALJ] finds that the claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: The claimant can understand and carry out simple instructions, but would have difficulty understanding complex instructions. She is able to sustain concentration for simple instructions but not complex instructions. She has a reduced ability to interact with large groups and coworkers, but retains the ability to interact with supervisors. Lastly, the claimant has reduced ability to adapt to changes in a work[-]like setting, and can understand simple changes.

. . . .

6.  The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

. . . .

7.  The claimant was born on September 25, 1977 and was 32 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8.  The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

. . . .

11. The claimant has not been under a disability, as defined in the Social Security Act, from September 29, 2009, through [January 30, 2012] (20 CFR 404.1520(g) and 416.920(g)).

(R. 24-31.)

On March 29, 2012, Plaintiff timely filed a request for review of the hearing decision. (R. 14.) On April 4, 2013, the Appeals Council denied Plaintiff's request for review, thereby making the ALJ's decision the final decision of the Commissioner. (R. 1-3.) Plaintiff then filed the instant action, requesting reversal of the decision of the Commissioner or a remand. (See Compl. at 2, ECF No. 1.)

On September 9, 2013, Plaintiff filed a memorandum in opposition to the Commissioner's decision. (ECF No. 10.) Defendant filed a memorandum in support of the Commissioner's decision on October 31, 2013. (ECF No. 11.)

## II. LEGAL STANDARD

Pursuant to 42 U.S.C. § 405(g), a claimant may obtain judicial review of any final decision made by the Commissioner after a hearing to which he was a party. "The court shall have power to enter, upon the pleadings and transcript of the record,

a judgment affirming, modifying, or reversing the decision of
the Commissioner of Social Security, with or without remanding
the cause for a rehearing."  42 U.S.C. § 405(g).

A district court's review is limited to the record made in
the administrative hearing process.  Garner v. Heckler, 745 F.2d
383, 387 (6th Cir. 1984).  The purpose of this review is to
determine whether or not there is substantial evidence to
support the Commissioner's decision, 42 U.S.C. § 405(g), and
whether the correct legal standards were applied.  See Kyle v.
Comm'r of Soc. Sec., 609 F.3d 847, 854 (6th Cir. 2010); Lindsley
v. Comm'r of Soc. Sec., 560 F.3d 601, 604-05 (6th Cir. 2009).

Substantial evidence is defined as "such relevant evidence
as a reasonable mind might accept as adequate to support a
conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971)
(quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938));
Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir.
2007).  "'Substantial evidence' is more than a mere scintilla of
evidence, but less than a preponderance."  Bell v. Comm'r of
Soc. Sec., 105 F.3d 244, 245 (6th Cir. 1996) (quoting Consol.
Edison, 305 U.S. at 229).

The Commissioner, not the district court, is charged with
the duty to weigh the evidence, to make credibility
determinations and resolve material conflicts in the testimony,
and to decide the case accordingly.  See Bass v. McMahon, 499

F.3d 506, 509 (6th Cir. 2007).  When substantial evidence supports the Commissioner's determination, it is conclusive, even if substantial evidence also supports the opposite conclusion.  See Foster v. Halter, 279 F.3d 348, 353 (6th Cir. 2001); Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986) (en banc).

**III. ANALYSIS**

    **A.   Administrative Determination**

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity."  42 U.S.C. § 423(d)(1).  The claimant bears the ultimate burden of establishing an entitlement to benefits.  Born v. Sec'y of Health & Human Servs., 923 F.2d 1168, 1173 (6th Cir. 1990).  "A prima facie case is established if the claimant shows a medical basis for an impairment that prevents him from engaging in his particular occupation."  Hephner v. Mathews, 574 F.2d 359, 361 (6th Cir. 1978).  The burden then shifts to the Commissioner to demonstrate the existence of available employment compatible with the claimant's disability and background.  Id. at 362; Born, 923 F.2d at 1173.

The Commissioner conducts the following five-step analysis to determine if an individual is disabled within the meaning of the Act:

1. An individual who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.

2. An individual who does not have a severe impairment will not be found to be disabled.

3. A finding of disability will be made without consideration of vocational factors, if an individual is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the regulations.

4. An individual who can perform work that he has done in the past will not be found to be disabled.

5. If an individual cannot perform his past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.

Long v. Comm'r of Soc. Sec., 375 F. Supp. 2d 674, 676-77 (W.D. Tenn. 2005) (citing Wyatt v. Sec'y of Health & Human Servs., 974 F.2d 680, 683-84 (6th Cir. 1992)); 20 C.F.R. § 404.1520(a)(4); accord Howard v. Comm'r of Soc. Sec., 276 F.3d 235, 238 (6th Cir. 2002). "Further review is not necessary if it is determined that an individual is not disabled at any point in this sequential analysis." Long, 375 F. Supp. 2d at 677 (citing 20 C.F.R. § 404.1520(a)).

In the instant case, the sequential analysis proceeded to the fifth step. The ALJ found that Plaintiff was capable of performing work as a housekeeper, small products assembler, or

conveyor off bearer, considering her residual functional capacity.  (R. 30-31.)

**B.    Review of ALJ Decision**

Plaintiff argues the ALJ erred by (1) inadequately articulating a valid basis for rejecting the consistent opinions of treating and examining medical sources; and (2) including impermissible language in the residual functional capacity ("RFC") assessment that does not clearly identify the relevant mental limitations and that resulted in an incomplete hypothetical being posed to the vocational examiner ("VE"). (ECF No. 10 at 11.)  Plaintiff maintains that, as a result of these errors, the ALJ reached conclusions that are unsupported by substantial evidence.  (<u>Id.</u>)  The Court disagrees.

**1.    Consideration of Plaintiff's Medical Providers**

Plaintiff argues that the ALJ failed to articulate a valid basis for rejection of the opinions of the treating nurse practitioner, Lisa Cox; the treating therapist, Debra Butler; and the examining psychologist, Katherine Powers.  (ECF No. 10 at 12-16.)  Defendant contends that the ALJ properly discounted these opinions.  (ECF No. 11 at 4-9.)  With respect to Cox, Defendant maintains that Cox is not considered an acceptable medical source, she did not provide relevant medical evidence, and her opinion was inconsistent with the record.  (<u>Id.</u> at 4-6.) Defendant also contends that Butler was not an acceptable

medical source and, at the time she issued her April 2011
opinion, she had not seen Plaintiff in seven months. (Id. at 6-
7.) Defendant asserts that the ALJ did consider Dr. Powers's
evaluation, but gave it little weight because it lacked
specificity as to Plaintiff's actual capabilities and because
Dr. Powers was not a treating source. (Id. at 7-8.)

Under the regulations, an ALJ must articulate good reasons
for not crediting the opinion of a "treating source." See Smith
v. Comm'r of Soc. Sec., 482 F.3d 873, 875-76 (6th Cir. 2007);
Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544-45 (6th Cir.
2004). A "treating source" is defined as a plaintiff's "own
physician, psychologist, or other acceptable medical source who
provides [the claimant], or has provided [the claimant], with
medical treatment or evaluation and who has, or has had, an
ongoing treatment relationship with [the claimant]." 20 C.F.R.
§ 404.1502; see 20 C.F.R. § 404.1513(a) (defining "acceptable
medical sources"). Unlike a physician, a nurse practitioner is
not an "acceptable medical source." 20 C.F.R. §§ 404.1502,
404.1513(d)(1). Social Security Regulation 06-03p nevertheless
instructs courts to consider opinions from other medical
sources, such as nurse practitioners, along with the other
relevant evidence in the file. SSR 06-03p, 2006 WL 2329939
(Aug. 9, 2006).

### a.   Lisa Cox

The ALJ properly discounted the testimony of Plaintiff's
nurse practitioner, Lisa Cox.  Because Cox is a nurse
practitioner, the ALJ was required to consider her opinion,
along with the other relevant evidence in the record, but was
not required to articulate a "good reason" for her decision to
"g[i]ve it weight [only] to the extent that it is consistent
with the record as a whole."  (R. 29; see SSR 06-03p.  Compare
Smith, 482 F.3d at 876 (finding that where doctors did not
qualify as treating sources, the ALJ did not need to give
reasons for rejecting their reports), with Rogers, 486 F.3d at
242-23 (holding that an ALJ must identify good reasons for
discounting treating physician opinions and explain "precisely
how those reasons affected the weight accorded the opinions"),
and Wilson, 378 F.3d at 545 (finding the ALJ erred in failing to
"give good reasons" for not giving weight to a treating
physician's opinion).)

The ALJ nevertheless provided several reasons for
discounting Cox's opinion.  Specifically, the ALJ found that
Cox's overall credibility was undermined by Cox's indication
that she was a doctor on the medical source form.  (R. 29.)  The
ALJ further observed that

> treatment  records  from  the  same  day  the  form  was
> completed  show  that  there  w[ere]  no  substantial
> details  to  report  and  that  the  claimant  was  within

> normal limits in nearly every category assessed.
> Although the claimant displayed worry, she was not
> characterized as depressed and has not been assessed
> as such since July 2009. Furthermore, in July 2010,
> the claimant reported that she was doing well overall
> and had registered for school (Exhibit 2F, 9F).

(Id.) Thus, the ALJ found that the "information . . . contained in Ms. Cox's treatment notes . . . is incompatible with her assessment" that Plaintiff "possessed marked to extreme limitations in every area of functioning." (Id.)

The ALJ's conclusion is supported by substantial evidence. Cox completed the medical source report on March 31, 2011. (See R. 339.) Cox "works in coordination with Dr. Mosk[o]vitz in his treatment." (R. 47.) The progress note from Plaintiff's visit to Dr. Moskovitz on March 3, 2010, indicates that Plaintiff's condition was improving. (See R. 219.) On April 14, 2010, Plaintiff reported that her symptoms had improved, but that she was still having anxiety. (See R. 216.) The progress note from that date indicates that Plaintiff was "not having as many bad days" and was "sleeping better." (R. 215.) On July 7, 2010, Plaintiff reported that she was still depressed, but that her symptoms had not worsened. (See R. 335.) The progress note from that day indicates that Plaintiff registered for school, had an improved mood, and was "overall doing well" even though she was "still dealing [with] depression." (R. 334.) On October 6, 2010, Plaintiff indicated that her symptoms had

improved "somewhat." (R. 332.) The progress note from that day
indicates that Plaintiff was "doing pretty well," but was still
depressed. (R. 331.) On January 5, 2011,[1] Plaintiff reported no
changes in the severity of her symptoms. (See R. 328.) The
progress report from that day also indicates "no change" in
Plaintiff's condition. (R. 327.) Similarly, on March 31, 2011,
Plaintiff did not report a change in the severity of her
symptoms (see R. 325), and the progress report indicates "no
change" in her condition. (R. 324.) Thus, despite Cox's
opinion that Plaintiff possessed marked or extreme limitations
in every area of functioning, Plaintiff's condition was
unchanging or improving for the twelve months preceding Cox's
medical source report. Substantial evidence supports the ALJ's
finding that Cox's opinion was inconsistent with and unsupported
by the other relevant medical evidence.

### b. Debra Butler

The ALJ also properly discounted the testimony of
Plaintiff's therapist, Debra Butler. Butler is a licensed
clinical social worker ("LCSW") and, as such, is not considered
to be an "acceptable medical source." 20 C.F.R. §§ 404.1502,
404.1513(d)(1). The ALJ gave Butler's opinion "little
evidentiary weight" because it was "very general in nature" and

---

[1] The "office visit update" form completed by Plaintiff reflects a date
of January 5, 2010. (See R. 328.) This appears to be a clerical error. The
accompanying progress report is dated January 5, 2011. (R. 327.)

"lacked specificity regarding [Plaintiff's] actual limitations."

(R. 29.)  In a letter dated April 22, 2011, Butler notes that

"[s]ince receiving outpatient individual therapy, Ms. Farmer has

continued to struggle with [her] symptoms and continues to be in

need of mental and emotional stabilization."  (R. 301.)

Although Butler's progress notes are slightly more specific, she

does not opine as to Plaintiff's functional limitations or

provide insight into how Plaintiff's condition would affect her

ability to perform work.  (See R. 301-08.)  Additionally, it

appears that Plaintiff's last meeting with Butler was on

September 18, 2010, and that Plaintiff had not met with Butler

during the approximately seven months preceding Butler's letter.

(See R. 308.)[2]  Accordingly, substantial evidence supports the

ALJ's finding that Butler's opinion was too general to be given

meaningful evidentiary weight.

### c.    Katherine Powers

To the extent that Plaintiff argues that the ALJ failed to

properly consider the opinion of the examining psychologist,

Katherine Powers, Plaintiff is incorrect.  As an initial matter,

Dr. Powers is not a treating source.  See Smith, 482 F.3d at 876

("A physician qualifies as a treating source if the claimant

---

[2] The ALJ observed that "[a] close look at treatment notes reveals a 9-month gap in [Plaintiff's] therapy visits from October 2010 until June 2011." (R. 27.)  The ALJ evidently was referring to an entry dated June 26, 2011, but, based on the substance of the entry and its location in the record, this entry appears to have been misdated.  (See R. 306.)  Most likely, this entry refers to a visit that took place on June 26, 2010.

sees her 'with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition.'" (alteration in original) (quoting 20 C.F.R. § 404.1502)). Plaintiff was referred to Dr. Powers only "for a clinical interview and mental status exam." (R. 276.) Thus, the ALJ was not required to provide a "good reason" for discounting Dr. Powers's opinion regarding Plaintiff's functional ability. Nevertheless, the ALJ considered Dr. Powers's report. (R. 28.) In the psychological evaluation report, Dr. Powers summarized Plaintiff's daily activities and overall condition. (R. 276-81.) Considering Plaintiff's capabilities, Dr. Powers opined:

> The claimant appears to need assistance managing her finances. The evaluator found no evidence to suggest that the claimant would have any psychological restriction in her ability to understand or remember simple instructions. Due to problems with concentration[,] she likely would experience mild to moderate impairment carrying out simple instructions. The claimant described moderate to marked impairment in her ability to sustain concentration and performance in activities at home and in her desire and willingness to engage in social activities. She appears to experience marked impairment in her ability to demonstrate adequate persistence and to cope with complex instructions. She appears to experience mild to moderate impairment in her ability to adapt.

(R. 281.) Despite asserting these opinions, Dr. Powers did not elaborate on the impact of said limitations on Plaintiff's actual capabilities. Accordingly, substantial evidence supports the ALJ's decision to give Dr. Powers's report little weight.

The ALJ was not required to articulate a "good reason" for placing little weight on the opinions of Cox, Butler, and Dr. Powers.  Moreover, substantial evidence supports the ALJ's decision to discount their opinions and place greater weight on the opinion of State agency consultant, Dr. Allen Carter.  See Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 409 (6th Cir. 2009) ("In appropriate circumstances, opinions from State agency medical . . . consultants . . . may be entitled to greater weight than the opinions of treating or examining sources." (omissions in original) (quoting SSR 96-6p, 1996 WL 374180, at *3 (July 2, 1996))).  Accordingly, Plaintiff's first claim of error fails.

### 2.    RFC Assessment

Plaintiff argues that the ALJ did not perform a proper function-by-function assessment because "the ALJ's decision contains no rationale as to why Ms. Farmer could perform sustained work activity" and because the ALJ used the phrase "reduced ability" in describing Plaintiff's non-exertional limitations.  (ECF No. 10 at 17.)  Plaintiff also argues that the use of the phrase "reduced ability" "does not clearly identify the vocationally relevant mental limitations resulting from Ms. Farmer's impairments and . . . resulted in an incomplete hypothetical being posed to the [vocational expert], also leaving her ultimate conclusions unsupported by substantial

evidence." (Id. at 16.)  Defendant argues that the ALJ met the requirements for articulating the RFC determination and properly performed a function-by-function analysis of Plaintiff's RFC. (ECF No. 11 at 9-10.)  Defendant also argues that the ALJ properly relied on the vocational expert's ("VE") testimony and that the VE understood the use of the term "reduced ability" as used in the ALJ's hypothetical.  (Id. at 11-12.)

### a.    Function-by-Function Assessment

The Court finds that the ALJ performed an appropriate function-by-function assessment.  "Although SSR 96-8p requires a 'function-by-function evaluation' to determine a claimant's RFC, case law does not require the ALJ to discuss those capacities for which no limitation is alleged."  Delgado v. Comm'r of Soc. Sec., 30 F. App'x 542, 547 (6th Cir. 2002).  Additionally, the ALJ is not required to produce a detailed function-by-function analysis in writing.  Id. (quoting Bencivengo v. Comm'r of Soc. Sec., 251 F.3d 153, slip op. at 4 (3d Cir. 2000) (unpublished table decision)).  "[T]he ALJ need only articulate how the evidence in the record supports the RFC determination, discuss the claimant's ability to perform sustained work-related activities, and explain the resolution of any inconsistencies in the record."  Id. (quoting Bencivengo, slip op. at 5.).

In this case, the ALJ found that Plaintiff had "no exertional limitations and retain[ed] the mental residual

function[al] capacity to understand and carry out simple instructions, but would have difficulty understanding complex instructions." (R. 29.) Additionally, the ALJ found that Plaintiff could "sustain concentration for simple instructions but not complex instructions. She has a reduced ability to interact with large groups and coworkers, but retains the ability to interact with supervisors. Lastly, the claimant has reduced ability to adapt to changes in a work like setting, and can understand simple changes." (Id.)

The ALJ adequately addressed Plaintiff's ability to perform sustained work activity. To the extent that Plaintiff argues that the ALJ provided insufficient detail as to Plaintiff's physical ability to perform sustained work activity, Plaintiff does not allege physical limitations, nor are any discussed in the opinions of Dr. Carter, Dr. Powers, Cox, or Butler. Accordingly, the ALJ was not required to engage in an in-depth analysis of Plaintiff's physical capabilities. Thus, the ALJ's finding that Plaintiff "has no exertional limitations" is sufficient and supported by substantial evidence in the record.

To the extent that Plaintiff argues that the ALJ provided insufficient explanation as to Plaintiff's mental ability to perform sustained work activity, Plaintiff's argument also fails. SSR 96-8p provides that "[o]rdinarily, RFC is an assessment of an individual's ability to do sustained work-

related physical and mental activities in a work setting on a regular and continuing basis." SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996). Thus, the ALJ's findings as to Plaintiff's non-exertional limitations necessarily considered Plaintiff's ability to perform sustained work activities on a regular and continuing basis. The ALJ provided a sufficient narrative discussion describing her consideration of all relevant evidence and explaining how she reached the RFC. (<u>See</u> R. 26-29.) Contrary to Plaintiff's allegation, ALJ was not required to explain how specific evidence in the record supported each functional limitation in the RFC. <u>See</u> <u>Delgado</u>, 30 F. App'x at 547.

Additionally, the ALJ's use of the phrase "reduced ability" as opposed to a more technical term such as "marked" or "less than marked" adequately describes Plaintiff's limitations and does not detract from the ALJ's RFC assessment. Plaintiff provides no authority that requires the ALJ to use the words "marked" or "moderate" to describe a plaintiff's functional limitations. (ECF No. 10 at 17-18.) Although the RFC assessment must address both the exertional and non-exertional capacities of the individual, SSR 96-8p does not require an ALJ to use specific words when describing an individual's capacities and limitations. The ALJ made specific findings as to Plaintiff's ability to understand and carry out instructions, to

sustain concentration, to interact with others, and to adapt to changes in the workplace.  (R. 29.)  This is sufficient to satisfy the requirement of a function-by-function assessment.

### b.  Hypothetical Question Posed to the VE

The Court also finds that the ALJ properly articulated Plaintiff's limitations in posing a hypothetical question to the VE.  "To meet the burden of showing that [the plaintiff] could perform work that is available in the national economy, the Commissioner must make a finding 'supported by substantial evidence that [the plaintiff] has the vocational qualifications to perform specific jobs.'"  Howard v. Comm'r of Soc. Sec., 276 F.3d 235, 238 (6th Cir. 2002) (quoting Varley v. Sec'y of Health & Human Servs., 820 F.2d 777, 779 (6th Cir. 1987)).  In making this determination, the ALJ may rely "on the testimony of a vocational expert (VE) in response to a 'hypothetical' question, but only 'if the question accurately portrays [the plaintiff's] individual physical and mental impairments.'"  Id. (quoting Varley, 820 F.2d at 779).  In articulating the hypothetical question, the ALJ "is required to incorporate only those limitations that he accepts as credible."  Griffeth v. Comm'r of Soc. Sec., 217 F. App'x 425, 429 (6th Cir. 2007) (citing Casey v. Sec'y of Health & Human Servs., 987 F.2d 1230, 1235 (6th Cir. 1993)).

At the ALJ hearing, the ALJ asked the VE to assume the following limitations:

> assuming the claimant's age, education, past work and
> transferable skills that you described; assume that I
> find that the claimant's pain and impairments are as
> follows.    Looking   at   5F,   claimant   would   have
> difficulty   understanding   complex   instructions,   but
> able to understand and carry out simple instructions,
> able to sustain concentration for simple instructions
> but not complex.  Has reduced ability to interact with
> large groups and coworkers, but retains the ability to
> interact with supervisors.    Has reduced ability to
> adapt to changes in the work like setting, and can
> understand   simple   changes;   that   is   changes   in   the
> work[-]like setting.

(R. at 60-61.)  Given these limitations, the VE opined that

Plaintiff could not return to her past work as a merchandising

coordinator because that job would involve more than simple

instructions and could not return to her past work as a cashier

because that job would involve interaction with "a lot of

people."  (R. 61.)  The VE opined that Plaintiff would be able

to perform the work of housekeeper (10,000 jobs available in

Tennessee; 500,000 jobs available nationally), small products

assembler (7,000 jobs available in Tennessee; 200,000 jobs

available nationally), and conveyor off bearer (5,000 jobs

available in Tennessee; 150,000 jobs available nationally).  (R.

61-62.)

In determining that there were a significant number of jobs

in the national economy that Plaintiff could perform, the ALJ

considered Plaintiff's "residual functional capacity, age,

education, and work experience in conjunction with the Medical-Vocational Guidelines, 20 CFR Part 404, Subpart P, Appendix 2." (R. 30.) The ALJ's hypothetical question to the VE accurately portrayed Farmer's physical and mental state. As discussed above, the ALJ was permitted to give greater weight to the opinion of Dr. Carter. See supra pp. 15-16. Additionally, the ALJ's use of the phrase "reduced ability" sufficiently and accurately describes Plaintiff's impairments; a more technical term was not required or necessary. See supra p. 19. Accordingly, the hypothetical posed to the VE is consistent with Dr. Carter's opinion as to Plaintiff's residual functional capacity and is supported by substantial evidence in the record. (See R. 282-98.)

In the instant case, Plaintiff has failed to carry her burden of proof. Plaintiff has not shown that the ALJ applied the incorrect standard or that there is not substantial evidence to support the ALJ's finding that Plaintiff is not disabled under sections 216(i) and 223(d) of the Social Security Act.

**IV. CONCLUSION**

For the foregoing reasons, the decision of the Commissioner is AFFIRMED.

**IT IS SO ORDERED,** this 13th day of June, 2016.

/s/ Jon P. McCalla
JON P. McCALLA
U.S. DISTRICT COURT JUDGE